IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| BMN Entertainment, LLC, | Case No. 3:24 CV 1870 |
| Plaintiff, | MEMORANDUM OPINION |
| -vs- | JUDGE JACK ZOUHARY |
| twineSTUDIO, LLC, et al., | |
| Defendants. | |

## INTRODUCTION

We begin with a breach of contract. Plaintiff, BMN Entertainment, LLC ("BMN"), contracted with Defendant twineSTUDIO, LLC ("Twine") to receive marketing components for BMN's comedy tour. The collaboration was shaped by Defendant Audrey Hargro ("Hargro"). The collaboration vanished. BMN made payments, but never received anything in return. This Court determined that Twine breached the contract and Hargro had been unjustly enriched.

A Bench Trial[1] on damages was held and briefing followed (Docs. 97–99). Under Federal Civil Rule 52(a), this Court issues the following findings of fact and conclusions of law.

## BACKGROUND

The background of this case was laid out in detail during the Summary Judgment phase (*see* Docs. 62, 65–68, 70–73). The trial addressed the remaining question of damages -- who owes how much. This Court heard testimony from Blake Craft, BMN's co-owner and CEO, and Jonathan Hawker, Twine's President. Craft explained in detail the parties' expectations and the relationship between Twine and BMN. Hawker expounded on the relationship between Twine and Hargro.

---

[1] The citation "Tr." refers to the unofficial transcript of the Bench Trial held on Wednesday, September 2, 2026.

Hargo declined to testify. At the conclusion of the one-day trial, the amount of damages was clear -- $75,500. Counsel submitted post-trial briefing on the matter of apportionment.

BMN proposes Twine should pay the total amount as the "sole contracting party," leaving apportionment to Twine's cross-claim against Hargro (Doc. 98 at 2). Twine argues this Court should apportion damages of $65,500 directly against Hargro, reflecting the amount of money she received. The difference -- $10,000 -- would then be Twine's contribution to the total (Doc. 97 at 1). Hargro maintains she was not a party to the contract, while admitting she received at least $60,500 (Doc. 99 at 2–5).

## DISCUSSION

There is no dispute a contract existed. There is no dispute Ohio law applies to the contract. BMN has produced sufficient evidence to show its actual damages of $75,500 (Ex. 104). $10,000 dollars is unquestionably owed by Twine to BMN (*see* Tr. at 109). But who is responsible for the remaining $65,500 -- Defendant Twine, Defendant Hargro, or both?

In response to Hargro's cross-examination, Craft made clear BMN's contractual expectations (Tr. at 14–15):

> [W]e was under the understanding and agreement that we was paying $75,500 to obtain sponsorship. Not for you all to go out and attempt and try. You specifically told us that you would guarantee to get us more than what we were paying. We was leery about even sending the funds. We sent the initial $37,750 and you called pressuring [us] saying "hey, I can't get my job done until the second deposit is paid." So, we went against our gut and we still sent it in. From there, we was like let's get her all her funds that she needs to go get whatever done she needs to get done, and from there it was just a waiting process. So we was under assumption that we would get more than $75,500 in sponsors because other than that it doesn't make sense to pay that amount of money to hope and wish that you going to get something and you specifically told us if I do not get sponsors I will give you your money back.

Craft was a credible witness during the trial and reinforced this Court's understanding that Hargro "was again leading the way 90[%]" and the "majority of communication was through [Hargro]" (*id.* at 17–18).

BMN zealously pursued their claims against *both* Twine and Hargro. Twine obviously breached its contract with BMN. While Hargro was not a signatory to that contract, she was the orchestrator. BMN knew it was paying for her services as it related to sponsorships. During their dealings, Hargro even offered to give BMN its money back (*see id.* at 15). Everyone, all three parties, knew their dealings were focused on sponsorships. Everyone knew who was responsible for sponsorships -- Hargro. This Court has already determined Hargro is liable for unjust enrichment.

She must be responsible for the money she demanded but never earned. Twine, as signatory to the breached contract, and Hargro, as an unjustly enriched participant, should be held jointly and severally liable to BMN for the $65,500 paid to Hargro (*see* Exs. 201–204).

This leaves the matter of Twine's crossclaim against Hargro (Doc. 18 at 19–20). Twine claims Hargro is solely and directly responsible for the money. Hawker explained the three services that were contracted for (photobooths, sponsorships, and photography/videography), and that Hargro was responsible for everything but the photobooths (Tr. at 26–27; Ex. 300; Doc. 1-1 at 27). These services were interwoven (Tr. at 28):

> [T]he talk was that there was going to be a significant amount of sponsorship raised, and Twine was -- or the split between the two parties was 70[%] to BMN and 30[%] to the combined effort on the side of Twine and Audrey. A portion of that was -- needed to perform the services of the photo booth. There were significant amount of expenses associated with that, and with travel, shipping, you know, people, hotels, all the things to actually produce that event. And the promise was that, you know, a portion of that 30[%] would be funding the production of the -- of the twineIt event[.]

As Hawker pinpointed: "Twine needed dollars to perform its tasks and those dollars were agreed to through the sponsorships and the sponsorship dollars never materialized" (*id.* at 95). Twine's ability to deliver the photobooths was contingent on Hargro's performance -- BMN as well believed it was "paying $75,500 to obtain sponsorship" (*id.* at 14). Hargro's failure to perform necessarily defeated Twine's ability to perform.

## CONCLUSION

BMN is entitled to $75,500 in damages. Twine is responsible for $10,000; Twine and Hargro are jointly and severally liable for the remaining $65,500; Twine may seek contribution from Hargro for any portion of the $65,500 it pays to BMN. Pre- and post-judgment interest to accrue at the applicable statutory rates.

IT IS SO ORDERED.

s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

September 30, 2026